IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| KATHLEEN A. LORENTZEN, | ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | COMPLAINT AND |
| v. | ) | JURY DEMAND |
| | ) | [Civil Rights Action Under |
| HEALTHSOURCE SAGINAW, INC., | ) | Title VII and Michigan |
| MARK E. KRAYNAK, and | ) | Law; Breach of Contract; |
| MARK PUCKETT, | ) | Breach of Covenant of Good |
| | ) | Faith; Tortious Interference; |
| Defendants. | ) | Termination in Violation of |
| _____ | ) | Public Policy] |

THOMAS MORE LAW CENTER
Richard Thompson (Mich. Bar No. P21410)
B. Tyler Brooks (N.C. Bar No. 37604) *†
24 Frank Lloyd Wright Drive
Suite J 3200 (P.O. Box 393)
Ann Arbor, MI 48106
(734) 827-2001
rthompson@thomasmore.org
tbrooks@thomasmore.org

*Admitted to practice law in North Carolina,
South Carolina, and Tennessee. Not admitted
to practice law in Michigan.

† Application for admission pending.

*Counsel for Plaintiff Kathleen A. Lorentzen*

Plaintiff Kathleen A. Lorentzen hereby brings this action against

defendant HealthSource Saginaw, Inc., including its employees, agents,

successors, and assigns ("HealthSource"), as well as defendants Mark E.

Kraynak and Mark Puckett (collectively, "defendants"), for violation of her

rights under federal civil rights law and the laws of the State of Michigan. Accordingly, Mrs. Lorentzen hereby alleges upon information and belief as follows:

## INTRODUCTION

1.     An employee does not forfeit her right to practice her religion and abide by the tenets of her faith when she enters the workplace.

2.     To the contrary, both federal and state laws generally prohibit discrimination in employment the basis of religion.

3.     Because defendants have violated her legally protected rights, Mrs. Lorentzen hereby sues under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.*, and Michigan common law.

## THE PARTIES

4.     Plaintiff Kathleen A. Lorentzen is a licensed clinical social worker with over two decades of experience in providing psychological counseling.  She resides in Saginaw, Michigan, and formerly worked for defendant HealthSource Saginaw, Inc.

5.     Defendant HealthSource Saginaw, Inc., is incorporated under the laws of the State of Michigan with its principal place of business located in Saginaw, Michigan.

6.    Upon information and belief, Defendant HealthSource Saginaw, Inc., employs in excess of 500 employees and is subject to the requirements of Title VII of the Civil Rights Act of 1964.

7.    Defendant HealthSource Saginaw, Inc., is an entity capable of being sued under both federal and Michigan law.

8.    At all times relevant to this complaint, defendant Mark E. Kraynak was a supervisory employee of defendant HealthSource Saginaw, Inc.

9.    At all times relevant to this complaint, defendant Mark Puckett was a supervisory employee of defendant HealthSource Saginaw, Inc.

## JURISDICTION AND VENUE

10.    This Court has federal question jurisdiction over Mrs. Lorentzen's claims under federal law pursuant to 28 U.S.C. §§ 1331 and 1343 as well as 42 U.S.C. § 2000e-5(f).

11.    Mrs. Lorentzen's state law claims are properly before this Court pursuant to 28 U.S.C. § 1367(a) because they are so related to the claims in the action that are within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12.    On February 15, 2018, Mrs. Lorentzen received a right to sue letter from the Equal Employment Opportunity Commission.

13.    This complaint has been timely filed.

14.    Mrs. Lorentzen has complied with all applicable requirements for administrative exhaustion of her claims.

15.    The Court may properly exercise personal jurisdiction over each of the defendants named in this suit.

16.    Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2) because it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTS

17.    Mrs. Lorentzen is Catholic and takes adherence to the tenets of her faith very seriously, including the tenets of the Catholic Church regarding marriage.

18.    Mrs. Lorentzen is also a licensed clinical social worker.  She has provided psychological counseling for over twenty years and has compiled an exemplary record during that time.

19.    Mrs. Lorentzen worked for defendant HealthSource as an Outpatient Behavioral Therapist from 2011 to 2017.  Though HealthSource technically classified Mrs. Lorentzen as an independent contractor, review of the relevant factors establishes that she was in reality an employee of HealthSource.  Such factors include, but are not limited to, the following: the fact that her work was performed on HealthSource's premises; the control

4

exerted by HealthSource over Mrs. Lorentzen's work; the manner in which patients were scheduled and assigned to Mrs. Lorentzen by HealthSource; the manner in which billing of patients was performed by HealthSource; the fact that Mrs. Lorentzen did not hire assistants, but instead relied on assistants who worked for HealthSource; the fact that HealthSource is in the business of providing psychological counseling (in addition to other medical services); and other factors to be established by the evidence produced in discovery and at trial.

20.     Both at HealthSource and at other locations, Mrs. Lorentzen has counseled a diverse range of individuals.

21.     Mrs. Lorentzen treats all of her patients with compassion, dignity, and respect.

22.     At HealthSource, Mrs. Lorentzen provided a variety of counseling services, including but not limited to marriage and family counseling.

23.     During her time with HealthSource, she never had any performance issues and never received any form of reprimand.

24.     At the time of her termination, she had a very active caseload.

25.     In the summer of 2017, Mrs. Lorentzen was referred a gay couple, who were seeking marriage counseling.

26.     She saw the couple on two occasions.

27.    Because of her Catholic religious beliefs, however, she felt that she could not see them any further *for marriage counseling*.

28.    On Wednesday, August 23, 2017, Mrs. Lorentzen approached her supervisor, defendant Mark E. Kraynak.  When the meeting began, Mr. Kraynak was in a good mood.

29.    Mrs. Lorentzen then calmly and politely asked Mr. Kraynak if she could refer the couple to another therapist in the practice because of the conflict with her religious beliefs.

30.    In response, Mr. Kraynak became very angry.  Mrs. Lorentzen then excused herself and left the meeting.

31.    The next day, Mr. Kraynak stopped Mrs. Lorentzen in the hall and asked if she was planning to call the couple.

32.    During their conversation, Mr. Kraynak asked that Mrs. Lorentzen have a letter typed telling the couple they were being referred to another therapist because Mrs. Lorentzen was reducing her hours.

33.    Pursuant to Mr. Kraynak's instructions, Mrs. Lorentzen left a handwritten draft of a letter with an office secretary for it to be typed.

34.    On August 29, 2017, Mrs. Lorenzen asked the office secretary about the letter.  The secretary responded that she was told not to type it and to instead call the clients without Mrs. Lorentzen's knowledge.

35.   At the end of the day on August 29, 2017, Mrs. Lorentzen was summoned into a meeting with Mr. Kraynak and Colton Reed, HealthSource's outpatient manager.

36.   Mrs. Lorentzen was then interrogated in an aggressive and condescending manner about her faith and her work at HealthSource.

37.   During this exchange, Mrs. Lorentzen objected that she felt like she was being harassed and discriminated against because of her religion.

38.   Mr. Kraynak told Mrs. Lorentzen that she had to be "a social worker first, and a Catholic second."

39.   When Mrs. Lorentzen tried to explain her position by referring to the views of certain members of the clergy, Mr. Kraynak hatefully said, "They are just priests!"

40.   Because of how angry both men were and the fact they were the only three people still in that part of the office, Mrs. Lorentzen became frightened for her safety and said she wanted to leave.  Mr. Reed then rushed out and slammed the door.

41.   As Mrs. Lorentzen left the meeting, Mr. Kraynak walked behind her right on her heels, in a menacing manner, out of the office and into the parking lot.

42.   By letter from Mark Puckett dated September 6, 2017, Mrs. Lorentzen was informed that she was being terminated in 30 days.  Mr.

Puckett's title at HealthSource is "Program Executive – Behavioral Medicine Center."

43.    Following receipt of the September 6, 2017 letter, Mrs. Lorentzen was subjected to a number of actions that undermined, embarrassed, and humiliated her.

44.    These demeaning, threatening, and abusive actions include, but are not limited to, the following:

a) On September 12, 2017, Mrs. Lorentzen was walking behind Mr. Kraynak through a heavy door.  Knowing she was behind him, he nonetheless intentionally closed the door, causing her to drop some of the files she was carrying.

b) On September 14, 2017, Mr. Kraynak purposely walked right toward where she was standing and pushed into her with his body before walking off with no apology.

c) On September 19, 2017, Mrs. Lorentzen was in a common work area in the office when Mr. Kraynak came and stood right next to her in a physically intimidating manner.  He was so close to Mrs. Lorentzen, she could feel his sweater and his hip next to her.  She felt sexually intimidated by Mr. Kraynak's behavior.  The office receptionist saw this and asked, "What is going on?" after Mr. Kraynak left.

d) On September 27, 2017, around noon, Messrs. Reed and Puckett were in the parking lot right outside the office. Mr. Reed pointed to Mrs. Lorentzen's car and waived his hands in an exaggerated manner while he and Mr. Puckett both laughed.

e) On several occasions, Mr. Kraynak and Mr. Reed each physically blocked Mrs. Lorentzen from walking down the hallway; and

f) On several occasions, Mr. Reed stood in the hallway and eavesdropped on Mrs. Lorentzen when she was in her office.

45.    Additionally, HealthSource communicated with Mrs. Lorentzen's clients without her knowledge or consent and failed to afford her clients the opportunity to talk with her regarding her departure from HealthSource before contacting them.

46.    In particular, HealthSource told Mrs. Lorentzen's clients that she was leaving HealthSource and that they would be assigned a new therapist. This action caused confusion with Mrs. Lorentzen's clients, many of whom felt angry, betrayed, or anxious about purportedly having to see a new therapist.

47.    HealthSource also interfered with Mrs. Lorentzen's ability to see her patients after she was terminated by HealthSource.

9

48.     Because of the quality of care provided by Mrs. Lorentzen, most of her patients desired to continue receiving treatment from her rather than see a new therapist.

49.     Furthermore, after being terminated, Mrs. Lorentzen was not able to see her patients for a period of time until she became part of a new practice—and, even after she was in a new practice, some patients could not see her until she was placed on an appropriate insurer's provider list. This gap in treatment caused many patients to regress because they could not obtain needed counseling.

50.     When HealthSource's Medical Director found out the actual reason Mrs. Lorentzen was leaving, he told Messrs. Reed and Kraynak that the gay couple seeking counseling could have simply been referred to another therapist and that they should not have terminated her without consulting him first.

51.     At all times relevant to this complaint, Messrs. Kraynak, Reed, and Puckett were acting within the course and scope of their employment with HealthSource.

52.     The acts and omissions of Messrs. Kraynak, Reed, and Puckett in this case are imputable to defendant HealthSource under the doctrines of *respondeat superior* and vicarious liability.

53.     The termination of Mrs. Lorentzen and the other discriminatory and retaliatory acts described herein were undertaken with malice and/or with reckless indifference to her legally protected civil rights.

54.     As a direct and proximate result of the above-described actions of defendants, Mrs. Lorentzen has incurred loss of income and has suffered mental and emotional distress as well as illness and other physical symptoms.

## COUNT I:
### Religious Discrimination in Violation of
### Title VII – Disparate Treatment
### (Against Defendant HealthSource)

55.     The preceding paragraphs are hereby realleged and incorporated herein by reference.

56.     Religion constitutes a protected class under Title VII.

57.     Mrs. Lorentzen's supervisors at HealthSource did not hold Mrs. Lorentzen's same religious beliefs.

58.     Mrs. Lorentzen was subjected to adverse employment actions by defendant HealthSource, including termination of her employment.

59.     Mrs. Lorentzen's protected status (religion) was a motivating factor in the decisions of defendant HealthSource that constituted adverse employment actions, including her termination.

60.    The above allegations of this complaint describe conduct that constitutes direct evidence of invidious discrimination on the basis of religion in violation of Title VII.

61.    At the time defendant HealthSource took adverse employment actions against Mrs. Lorentzen, including her termination, her job performance was satisfactory.

62.    At the time defendant HealthSource took adverse employment actions against Mrs. Lorentzen, including her termination, Mrs. Lorentzen was qualified for her position.

63.    Employees outside of the protected class were treated more favorably than Mrs. Lorentzen.

64.    Defendant HealthSource's discrimination against Mrs. Lorentzen was intentional.

65.    Defendant HealthSource lacked any justification for the adverse employment actions taken against Mrs. Lorentzen.

66.    Any justification offered by Defendant HealthSource for its adverse employment actions is either false or insufficient to support the nature of the adverse employment actions taken.

67.    Defendant HealthSource therefore violated Title VII, and Ms. Lorentzen is entitled to the relief set out more fully below, including an award of punitive damages under Title VII.

12

## COUNT II:
## Religious Discrimination in Violation of Title VII –
## Harassment/Hostile Work Environment
## (Against Defendant HealthSource)

68.    The preceding paragraphs are hereby realleged and incorporated herein by reference.

69.    Defendant HealthSource also subjected Mrs. Lorentzen to harassment and a hostile work environment because of her religion.  Such conduct includes, but is not limited to, being interrogated in a threatening manner about her religious beliefs, having her beliefs mocked and ridiculed, having false information communicated to Mrs. Lorentzen's patients, and being forced to endure physical intimidation by male supervisors at HealthSource.

70.    This course of conduct was motivated by Mrs. Lorentzen's religion, including her religious beliefs and practices.

71.    As such, defendant HealthSource engaged in a series of separate acts which constitute one unlawful employment practice for purposes of anti-discrimination law.

72.    The harassing conduct was so severe and pervasive that a reasonable person in Mrs. Lorentzen's position would find her work environment to be hostile or abusive.

73.    Defendant HealthSource therefore violated Title VII, and Mrs. Lorentzen is entitled to the relief set out more fully below, including an award of punitive damages under Title VII.

## COUNT III:
## Religious Discrimination in Violation of
## Title VII – Denial of Religious Accommodation
## (Against Defendant HealthSource)

74.    The preceding paragraphs are hereby realleged and incorporated herein by reference.

75.    Defendant HealthSource discriminated against Mrs. Lorentzen by failing to grant her request for religious accommodation of her sincerely held religious beliefs and religious practices.

76.    Mrs. Lorentzen's *bona fide* religious beliefs and practices conflict with certain of defendant HealthSource's employment practices, requests, and/or requirements.

77.    Mrs. Lorentzen brought this conflict to the attention of defendant HealthSource.

78.    Mrs. Lorentzen's religious beliefs and practices were the basis for defendant HealthSource's adverse employment actions, including her termination.

79.    Accommodating Mrs. Lorentzen's request for religious accommodation would not have imposed an undue hardship on defendant HealthSource.

14

80.    Indeed, after Mrs. Lorentzen left HealthSource, the couple that had prompted Mrs. Lorentzen's request for accommodation was seen by a therapist who had been working at HealthSource at the same time as Mrs. Lorentzen.  This same therapist has also seen at least one other couple that Mrs. Lorentzen treated at HealthSource.

81.    Defendant HealthSource therefore violated Title VII, and Mrs. Lorentzen is entitled to the relief set out more fully below, including an award of punitive damages under Title VII.

### COUNT IV:
### Retaliation in Violation of Title VII
### (Against Defendant HealthSource)

82.     The preceding paragraphs are hereby realleged and incorporated herein by reference.

83.    Mrs. Lorentzen engaged in activity protected by Title VII, including, but not limited to, making requests for religious accommodation and complaining about and opposing unlawful discrimination and harassment.

84.    Mrs. Lorentzen was subjected to adverse employment actions, including termination, because of her protected activity.

85.    Defendant HealthSource therefore violated Title VII, and Mrs. Lorentzen is entitled to the relief set out more fully below, including an award of punitive damages under Title VII.

15

## COUNT V:
## Violation of the Elliott-Larsen Civil Rights Act
## (Against All Defendants)

86.    The preceding paragraphs are hereby realleged and incorporated herein by reference.

87.    As described above, defendant HealthSource discriminated against and terminated Mrs. Lorentzen because of her religion and/or because she complained about, opposed, and made a charge about religious discrimination and harassment that violated the Elliott-Larsen Civil Rights Act.

88.    Defendant HealthSource's discriminatory and retaliatory actions violated the Elliott-Larsen Civil Rights Act.

89.    Defendant HealthSource's violation of the Elliott-Larsen Civil Rights Act was caused by at least two of its agents, defendants Mark E. Kraynak and Mark Puckett.

90.    Both Mr. Kraynak and Mr. Puckett engaged in discrimination and retaliation against Mrs. Lorentzen in violation of the Elliott-Larsen Civil Rights Act.

91.    Upon information and belief, defendants Mark Kraynak and Mark Puckett conspired amongst themselves, with HealthSource, and/or with others to violate Mrs. Lorentzen's civil rights under the Elliott-Larsen Civil Rights Act.

16

92.     Mrs. Lorentzen has been damaged by defendants as a direct and proximate result of their violations of the Elliott-Larsen Civil Rights Act.

93.     Accordingly, Mrs. Lorentzen is entitled to the relief from defendants set out more fully below, including an award of punitive damages under the Elliott-Larsen Civil Rights Act.

## COUNT VI:
## Breach of Contract
## (Against Defendant HealthSource)

94.     The preceding paragraphs are hereby realleged and incorporated herein by reference.

95.     A legally valid and enforceable contract existed between defendant HealthSource and Mrs. Lorentzen.

96.     All conditions precedent to performance of the contract have occurred, and no conditions subsequent have excused defendant HealthSource from that contract.

97.     Defendant HealthSource has breached this contract.

98.     Defendant HealthSource's breach of contract was unjustified and without cause.

99.     Mrs. Lorentzen has been damaged as a direct and proximate result of defendant HealthSource's breach of contract, and she is therefore entitled to damages, as described more fully below.

## COUNT VII:
## Breach of the Covenant of Good
## Faith and Fair Dealing
## (Against Defendant HealthSource)

100.   The preceding paragraphs are hereby realleged and incorporated herein by reference.

101.   Defendant HealthSource was under an obligation to act in good faith and with fair dealing as to the terms of the contract it had with Mrs. Lorentzen.

102.   Defendant HealthSource has breached its obligation to act in good faith and with fair dealing with respect to that contract.

103.   Defendant HealthSource's breach of the covenant of good faith and fair dealing was unjustified and without cause.

104.   Mrs. Lorentzen has been harmed as a direct and proximate result of defendant HealthSource's breach of the covenant of good faith and fair dealing, and she is therefore entitled to damages, as described more fully below.

## COUNT VIII:
## Tortious Interference with Business
## Relationship or Business Expectancy
## (Against All Defendants)

105.   The preceding paragraphs are hereby realleged and incorporated herein by reference.

106.   Mrs. Lorentzen had established and valid business relationships with her patients as well as an expectancy of future business from said patients.

107.   Defendants had knowledge of these business relationships and expectancies.

108.   Defendants intentionally interfered with these business relationships and expectancies by inducing or causing a breach or termination of certain of the relationships and expectancies.

109.   As a direct and proximate result of the actions taken by defendants, Mrs. Lorentzen has sustained injury and damages.

110.   Mrs. Lorentzen is therefore entitled to the relief from defendants set out more fully below.

### COUNT IX:
### Termination in Violation of Michigan Public Policy
### (Against Defendant HealthSource)

111.   The preceding paragraphs are hereby realleged and incorporated herein by reference.

112.   Under Michigan law, certain grounds for terminating a worker are so contrary to public policy as to be actionable.

113.   Michigan courts have recognized that, where a worker acts in accordance with a statutorily granted right and is terminated because of such action, a cause of action will lie.

114.   As set forth in greater detail above, defendant HealthSource terminated Mrs. Lorentzen because she engaged in statutorily granted rights, including requesting a religious accommodation and complaining about and opposing religious discrimination.

115.   Mrs. Lorentzen has been harmed as a direct and proximate result of defendant HealthSource's decision to terminate her in violation of public policy, and she is therefore entitled to damages, as described more fully below, including an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Kathleen A. Lorentzen respectfully prays that the Court grant her the following relief:

1.   Grant her a trial by jury on all claims so triable;

2.   Grant her compensatory damages, including but not necessarily limited to back pay, past and future medical expenses, and damages for past and future mental and emotional distress;

3.   Grant her an award of punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), the Elliott-Larsen Civil Rights Act, and Michigan common law;

4.   Grant her prejudgment and post-judgment interest;

5.   Grant her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k), Mich. Comp. Laws § 37.2801(3), and as may be otherwise allowed by applicable law;

6.    Tax costs of this action against the defendants; and

7.    Grant her such other and further relief as the Court may deem just and proper.

Respectfully submitted, this the <u>11th</u> day of May, 2018.

THOMAS MORE LAW CENTER

<u>BY: s/Richard Thompson</u>
Richard Thompson (Mich. Bar No. P21410)
B. Tyler Brooks (N.C. Bar No. 37604)*†
24 Frank Lloyd Wright Drive
Suite J 3200 (P.O. Box 393)
Ann Arbor, Michigan 48106
Telephone: (734) 827-2001
Fax: (734) 930-7160
rthompson@thomasmore.org
tbrooks@thomasmore.org

*Admitted to practice law in North Carolina, South Carolina, and Tennessee. Not admitted to practice law in Michigan.

† Application for admission pending.

*Counsel for Plaintiff Kathleen A. Lorentzen*