# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION
Case No. 1:18-cv-11507-TLL-PTM

| | | |
|---|---|---|
| KATHLEEN A. LORENTZEN, | ) | Hon. Thomas L. Ludington |
| | ) | |
| Plaintiff, | ) | Hon. Patricia T. Morris, USMJ |
| | ) | |
| v. | ) | AMENDED COMPLAINT |
| | ) | AND JURY DEMAND |
| HEALTHSOURCE SAGINAW, INC., | ) | [Civil Rights Action Under |
| MARK E. KRAYNAK, and | ) | Title VII and Michigan |
| MARK PUCKETT, | ) | Law; Breach of Contract and |
| | ) | Covenant of Good Faith; |
| Defendants. | ) | Tortious Interference; |
| | ) | Termination in Violation of |
| | ) | Public Policy; Declaratory |
| _____ | ) | Judgment Request] |

THOMAS MORE LAW CENTER
Richard Thompson (Mich. Bar No. P21410)
B. Tyler Brooks (Mich. Bar No. P82567)
24 Frank Lloyd Wright Drive
Suite J 3200 (P.O. Box 393)
Ann Arbor, MI 48106
(734) 827-2001
rthompson@thomasmore.org
tbrooks@thomasmore.org

*Counsel for Plaintiff Kathleen A. Lorentzen*

Plaintiff Kathleen A. Lorentzen hereby brings this action against defendant HealthSource Saginaw, Inc., including its employees, agents, successors, and assigns, as well as defendants Mark E. Kraynak and Mark Puckett (collectively, "defendants"), for violation of her rights under federal

civil rights law and the laws of the State of Michigan. Accordingly, Mrs. Lorentzen alleges upon information and belief as follows:

## INTRODUCTION

1.    An employee does not forfeit her right to practice her religion and abide by the tenets of her faith when she enters the workplace.

2.    To the contrary, both federal and state laws generally prohibit discrimination in employment on the basis of religion.

3.    Because defendants have violated her legally protected rights, Mrs. Lorentzen hereby sues under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.*, and Michigan common law.

## THE PARTIES

4.    Plaintiff Kathleen A. Lorentzen is a licensed clinical social worker with over two decades of experience in providing psychological counseling. She resides in Saginaw, Michigan, and formerly worked for defendant HealthSource Saginaw, Inc.

5.    Defendant HealthSource Saginaw, Inc., is incorporated under the laws of the State of Michigan with its principal place of business located in Saginaw, Michigan.

6. Upon information and belief, defendant HealthSource Saginaw, Inc., employs in excess of 500 employees and is, in any event, subject to the requirements of Title VII of the Civil Rights Act of 1964.

7. Defendant HealthSource Saginaw, Inc., is an entity capable of being sued under both federal and Michigan law.

8. At all times relevant to this amended complaint, defendant Mark E. Kraynak was a supervisory employee of defendant HealthSource Saginaw, Inc.

9. Upon information and belief, at all times relevant to this amended complaint, defendant Mark Puckett served as a supervisory employee or other similar agent for defendant HealthSource Saginaw, Inc., and was an individual through whom defendant HealthSource Saginaw, Inc., made and/or carried out various business decisions, including employment decisions, that are pertinent to this action. The actions of defendant Mark Puckett described below occurred within the course and scope of his employment or agency with defendant HealthSource Saginaw, Inc., while he was physically present and acting in the State of Michigan, and are imputable to defendant HealthSource Saginaw, Inc., via the doctrines of *respondeat superior*, vicarious liability, and/or other law.

## JURISDICTION AND VENUE

10. This Court has federal question jurisdiction over Mrs. Lorentzen's claims under federal law pursuant to 28 U.S.C. §§ 1331 and 1343 as well as 42 U.S.C. § 2000e-5(f).

11. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, by 42 U.S.C. § 2000e-5(g), by the Elliott-Larsen Civil Rights Act, and by the general legal and equitable powers of this Court.

12. Mrs. Lorentzen's state law claims are properly before this Court pursuant to 28 U.S.C. § 1367(a) because they are so related to the claims in the action that are within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

13. On February 15, 2018, Mrs. Lorentzen received a right to sue letter from the Equal Employment Opportunity Commission.

14. Plaintiff's original complaint was thereafter timely filed in this Court.

15. Mrs. Lorentzen has complied with all applicable requirements for administrative exhaustion of her claims.

16. The Court may properly exercise personal jurisdiction over each of the defendants named in this suit.

17.     Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2) because it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

18.     Mrs. Lorentzen's original complaint was filed in this Court on May 11, 2018.  She then properly served a summons and copy of the complaint on defendants HealthSource Saginaw, Inc., and Mark E. Kraynak, both of whom filed and served an answer thereto on June 29, 2018.  Defendant Mark Puckett executed a waiver of service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, which was filed with this Court on June 25, 2018.  This amended complaint is now filed as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).

## FACTS

19.     Mrs. Lorentzen is Catholic and takes adherence to the tenets of her faith very seriously, including the tenets of the Catholic Church regarding marriage.

20.     Mrs. Lorentzen is also a licensed clinical social worker.  She has provided psychological counseling for over twenty years and has compiled an exemplary record during that time.

21.     Mrs. Lorentzen worked for defendant HealthSource Saginaw, Inc. ("HealthSource"), as an Outpatient Behavioral Therapist from 2011 to 2017.  Though  HealthSource  technically  classified  Mrs.  Lorentzen  as  an

independent contractor, review of the relevant factors establishes that she was in reality an employee of HealthSource. Such factors include, but are not limited to, the following: the fact that her work was performed on HealthSource's premises; the control exerted by HealthSource over Mrs. Lorentzen's work; the manner in which patients were scheduled and assigned to Mrs. Lorentzen by HealthSource; the manner in which billing of patients was performed by HealthSource; the fact that Mrs. Lorentzen did not hire assistants, but instead relied on assistants who worked for HealthSource; the fact that HealthSource is in the business of providing psychological counseling (in addition to other medical services); and other factors to be established by the evidence produced in discovery and at trial.

22. Both at HealthSource and at other locations, Mrs. Lorentzen has counseled a diverse range of individuals.

23. Mrs. Lorentzen treats all of her patients with compassion, dignity, and respect.

24. At HealthSource, Mrs. Lorentzen provided a variety of counseling services, including but not limited to marriage and family counseling.

25. During her time with HealthSource, she never had any performance issues and never received any form of reprimand.

26. At the time of her termination, she had a very active caseload.

27.     In the summer of 2017, Mrs. Lorentzen was referred a gay couple, who were seeking marriage counseling.

28.     She saw the couple on two occasions.

29.     Because of her Catholic religious beliefs, however, she felt that she could not see them any further *for marriage counseling*.

30.     On Wednesday, August 23, 2017, Mrs. Lorentzen approached her supervisor, defendant Mark E. Kraynak.  When the meeting began, Mr. Kraynak was in a good mood.

31.     Mrs. Lorentzen then calmly and politely asked Mr. Kraynak if she could refer the couple to another therapist in the practice because of the conflict with her religious beliefs.

32.     In response, Mr. Kraynak became very angry.  Mrs. Lorentzen then excused herself and left the meeting.

33.     The next day, Mr. Kraynak stopped Mrs. Lorentzen in the hall and asked if she was planning to call the couple.

34.     During their conversation, Mr. Kraynak asked that Mrs. Lorentzen have a letter typed telling the couple they were being referred to another therapist because Mrs. Lorentzen was reducing her hours.

35.     Pursuant to Mr. Kraynak's instructions, Mrs. Lorentzen left a handwritten draft of a letter with an office secretary for it to be typed.

36.     On August 29, 2017, Mrs. Lorenzen asked the office secretary about the letter.  The secretary responded that she was told not to type it and to instead call the clients without Mrs. Lorentzen's knowledge.

37.     At the end of the day on August 29, 2017, Mrs. Lorentzen was summoned into a meeting with Mr. Kraynak and Colton Reed, HealthSource's outpatient manager.

38.     Mrs. Lorentzen was then interrogated in an aggressive and condescending manner about her faith and her work at HealthSource.

39.     During this exchange, Mrs. Lorentzen objected that she felt like she was being harassed and discriminated against because of her religion.

40.     Mr. Kraynak told Mrs. Lorentzen that she had to be "a social worker first and a Catholic second."

41.     When Mrs. Lorentzen tried to explain her position by referring to the views of certain members of the clergy, Mr. Kraynak hatefully said, "They are just priests!"

42.     Because of how angry both men were and the fact they were the only three people still in that part of the office, Mrs. Lorentzen became frightened for her safety and said she wanted to leave.  Mr. Reed then rushed out and slammed the door.

43. As Mrs. Lorentzen left the meeting, Mr. Kraynak walked behind her right on her heels, in a menacing manner, out of the office and into the parking lot.

44. By letter from defendant Mark Puckett dated September 6, 2017, Mrs. Lorentzen was informed that she was being terminated in 30 days. Mr. Puckett's title at HealthSource is (or at least was at that time) "Program Executive – Behavioral Medicine Center."

45. Following receipt of the September 6, 2017 letter, Mrs. Lorentzen was subjected to a number of actions that undermined, embarrassed, and humiliated her.

46. These demeaning, threatening, and abusive actions include, but are not limited to, the following:

a) On September 12, 2017, Mrs. Lorentzen was walking behind Mr. Kraynak through a heavy door. Knowing she was behind him, he nonetheless intentionally closed the door, causing her to drop some of the files she was carrying.

b) On September 14, 2017, Mr. Kraynak purposely walked right toward where she was standing and pushed into her with his body before walking off with no apology.

c) On September 19, 2017, Mrs. Lorentzen was in a common work area in the office when Mr. Kraynak came and stood right next to her in a

physically intimidating manner.  He was so close to Mrs. Lorentzen, she could feel his sweater and his hip next to her.  She felt sexually intimidated by Mr. Kraynak's behavior.  The office receptionist saw this and asked, "What is going on?" after Mr. Kraynak left.

d) On September 27, 2017, around noon, Messrs. Reed and Puckett were in the parking lot right outside the office.  Mr. Reed pointed to Mrs. Lorentzen's car and waived his hands in an exaggerated manner while he and Mr. Puckett both laughed.

e) On several occasions, Mr. Kraynak and Mr. Reed each physically blocked Mrs. Lorentzen from walking down the hallway; and

f) On several occasions, Mr. Reed stood in the hallway and eavesdropped on Mrs. Lorentzen when she was in her office.

45.     Additionally, HealthSource communicated with Mrs. Lorentzen's clients without her knowledge or consent and failed to afford her clients the opportunity to talk with her regarding her departure from HealthSource before contacting them.

46.     In particular, HealthSource told Mrs. Lorentzen's clients that she was leaving HealthSource and that they would be assigned a new therapist. This action caused confusion with Mrs. Lorentzen's clients, many of whom felt angry, betrayed, or anxious about purportedly having to see a new therapist.

47.     HealthSource also interfered with Mrs. Lorentzen's ability to see her patients after she was terminated by HealthSource.

48.     Because of the quality of care provided by Mrs. Lorentzen, most of her patients desired to continue receiving treatment from her rather than see a new therapist.

49.     Furthermore, after being terminated, Mrs. Lorentzen was not able to see her patients for a period of time until she became part of a new practice—and, even after she was in a new practice, some patients could not see her until she was placed on an appropriate insurer's provider list.  This gap in treatment caused many patients to regress because they could not obtain needed counseling.

50.     When HealthSource's Medical Director found out the actual reason Mrs. Lorentzen was leaving, he told Messrs. Reed and Kraynak that the gay couple seeking counseling could have simply been referred to another therapist and that they should not have terminated her without consulting him first.

51.     At all times relevant to this amended complaint, Messrs. Kraynak, Reed, and Puckett were acting within the course and scope of their employment or other agency relationship with HealthSource.

52.     The acts and omissions of Messrs. Kraynak, Reed, and Puckett in this case are imputable to defendant HealthSource under the doctrines of *respondeat superior*, vicarious liability, and/or other law.

53.     The termination of Mrs. Lorentzen and the other actions of defendants described herein were undertaken with malice and were so willful and wanton that they demonstrate a reckless disregard for her rights.

54.     As a direct and proximate result of the above-described actions of defendants, Mrs. Lorentzen has incurred loss of income and has suffered mental and emotional distress as well as illness and other physical symptoms.

## COUNT I:
## Religious Discrimination in Violation of
## Title VII – Disparate Treatment
## (Against Defendant HealthSource)

55.     The preceding paragraphs are hereby realleged and incorporated herein by reference.

56.     Religion constitutes a protected class under Title VII.

57.     Mrs. Lorentzen's supervisors at HealthSource did not hold Mrs. Lorentzen's same religious beliefs.

58.     Mrs. Lorentzen was subjected to adverse employment actions by defendant HealthSource, including termination of her employment.

59. Mrs. Lorentzen's protected status (religion) motivated the decisions of defendant HealthSource that constituted adverse employment actions, including her termination.

60. The above allegations of this amended complaint describe conduct that constitutes direct evidence of invidious discrimination on the basis of religion in violation of Title VII.

61. At the time defendant HealthSource took adverse employment actions against Mrs. Lorentzen, including her termination, her job performance was satisfactory.

62. At the time defendant HealthSource took adverse employment actions against Mrs. Lorentzen, including her termination, Mrs. Lorentzen was qualified for her position.

63. Employees outside of the protected class were treated more favorably than Mrs. Lorentzen.

64. Defendant HealthSource's discrimination against Mrs. Lorentzen was intentional.

65. Defendant HealthSource lacked any justification for the adverse employment actions taken against Mrs. Lorentzen.

66. Any justification offered by Defendant HealthSource for its adverse employment actions is either false or insufficient to support the nature of the adverse employment actions taken.

67. Defendant HealthSource therefore violated Title VII, and Ms. Lorentzen is entitled to the relief set out more fully below, including an award of punitive damages under Title VII.

## COUNT II:
### Religious Discrimination in Violation of Title VII –
### Harassment/Hostile Work Environment
### (Against Defendant HealthSource)

68. The preceding paragraphs are hereby realleged and incorporated herein by reference.

69. Defendant HealthSource also subjected Mrs. Lorentzen to harassment and a hostile work environment because of her religion. Such conduct includes, but is not limited to, being interrogated in a threatening manner about her religious beliefs, having her beliefs mocked and ridiculed, having false information communicated to Mrs. Lorentzen's patients, and being forced to endure physical intimidation by male supervisors at HealthSource.

70. This course of conduct was motivated by Mrs. Lorentzen's religion, including her religious beliefs and practices.

71. As such, defendant HealthSource engaged in a series of separate acts which constitute one unlawful employment practice for purposes of anti-discrimination law.

72.     The harassing conduct was so severe and pervasive that a reasonable person in Mrs. Lorentzen's position would find her work environment to be hostile or abusive.

73.     Defendant HealthSource therefore violated Title VII, and Mrs. Lorentzen is entitled to the relief set out more fully below, including an award of punitive damages under Title VII.

**COUNT III:**
**Religious Discrimination in Violation of**
**Title VII – Denial of Religious Accommodation**
**(Against Defendant HealthSource)**

74.     The preceding paragraphs are hereby realleged and incorporated herein by reference.

75.     Defendant HealthSource discriminated against Mrs. Lorentzen by failing to grant her request for religious accommodation of her sincerely held religious beliefs and religious practices.

76.     Mrs. Lorentzen's *bona fide* religious beliefs and practices conflict with certain of defendant HealthSource's employment practices, requests, and/or requirements.

77.     Mrs. Lorentzen brought this conflict to the attention of defendant HealthSource.

78.     Mrs. Lorentzen's religion, including her religious beliefs and practices, was the basis for defendant HealthSource's adverse employment actions, including her termination.

79. Accommodating Mrs. Lorentzen's request for religious accommodation would not have imposed an undue hardship on defendant HealthSource.

80. Indeed, after Mrs. Lorentzen left HealthSource, the couple that had prompted Mrs. Lorentzen's request for accommodation was seen by a therapist who had been working at HealthSource at the same time as Mrs. Lorentzen. This same therapist has also seen at least one other couple that Mrs. Lorentzen treated at HealthSource.

81. Defendant HealthSource therefore violated Title VII, and Mrs. Lorentzen is entitled to the relief set out more fully below, including an award of punitive damages under Title VII.

## COUNT IV:
## Retaliation in Violation of Title VII
## (Against Defendant HealthSource)

82. The preceding paragraphs are hereby realleged and incorporated herein by reference.

83. Mrs. Lorentzen engaged in activity protected by Title VII, including, but not limited to, making requests for religious accommodation and complaining about and opposing unlawful discrimination and harassment.

84. Mrs. Lorentzen was subjected to adverse employment actions, including termination, because of her protected activity.

16

85.     Defendant HealthSource therefore violated Title VII, and Mrs. Lorentzen is entitled to the relief set out more fully below, including an award of punitive damages under Title VII.

## COUNT V:
### Violation of the Elliott-Larsen Civil Rights Act
### (Against All Defendants)

86.     The preceding paragraphs are hereby realleged and incorporated herein by reference.

87.     As described above, defendant HealthSource discriminated against and terminated Mrs. Lorentzen because of her religion and/or because she complained about, opposed, and made a charge about religious discrimination and harassment that violated the Elliott-Larsen Civil Rights Act.

88.     Defendant HealthSource's actions violated the Elliott-Larsen Civil Rights Act.

89.     Defendant HealthSource's violation of the Elliott-Larsen Civil Rights Act was caused and carried out by at least two of its employees or agents, defendants Mark E. Kraynak and Mark Puckett.

90.     Thus, both Mr. Kraynak and Mr. Puckett likewise violated the Elliott-Larsen Civil Rights Act with respect to the actions alleged above.

91.     More specifically, defendants HealthSource, Kraynak, and Puckett were Mrs. Lorentzen's "employer" within the meaning of the Elliott-Larsen Civil Rights Act at the times described above.

92.     The actions described above as having been undertaken by defendants HealthSource, Kraynak, and Puckett in relation to Mrs. Lorentzen constitute violations of the requirements imposed upon an employer by the Elliot-Larsen Civil Rights Act.

93.     Additionally, under the Elliott-Larsen Civil Rights Act, defendant HealthSource is a place of public accommodation or public service and may not discriminate on the basis of religion in providing its accommodations or services. Similarly, defendants HealthSource, Kraynak, and Puckett were at all times relevant to this action prohibited from denying an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of such individual's religion.

94.     The actions described above as having been undertaken by defendants HealthSource, Kraynak, and Puckett in relation to Mrs. Lorentzen constitute violations of the requirements imposed upon a place of public accommodation or public service by the Elliot-Larsen Civil Rights Act.

95.     Defendants HealthSource, Kraynak, and Puckett were at all times relevant to this action prohibited from discriminating or retaliating

against an individual who has opposed a violation of the Elliott-Larsen Civil Rights Act or who has engaged in other conducted protected by said Act.

96. Mrs. Lorentzen opposed violation of the Elliott-Larsen Civil Rights Act and engaged in other conduct protected by that Act.

97. The actions described above as having been undertaken by defendants HealthSource, Kraynak, and Puckett in relation to Mrs. Lorentzen constitute violations of the anti-retaliation and anti-discrimination provisions contained in Article 7 of the Elliot-Larsen Civil Rights Act.

98. Upon information and belief, defendants Mark Kraynak and Mark Puckett conspired amongst themselves, with HealthSource, and/or with others to violate Mrs. Lorentzen's civil rights under the Elliott-Larsen Civil Rights Act; aided, abetted, incited, compelled, or coerced one or other persons to engage in a violation of the Elliott-Larsen Civil Rights Act; and/or attempted directly or indirectly to commit an act prohibited by said law.

99. The actions described above as having been undertaken by defendants HealthSource, Kraynak, and Puckett in relation to Mrs. Lorentzen constitute multiple violations of the Elliott-Larsen Civil Rights Act, as to its employment and/or its public accommodation/public services provisions.

100. Mrs. Lorentzen has been damaged by defendants as a direct and proximate result of these violations of the Elliott-Larsen Civil Rights Act.

101. Accordingly, Mrs. Lorentzen is entitled to the relief from defendants set out more fully below.

## COUNT VI:
## Breach of Contract
## (Against Defendant HealthSource)

102. The preceding paragraphs are hereby realleged and incorporated herein by reference.

103. A legally valid and enforceable contract existed between defendant HealthSource and Mrs. Lorentzen.

104. All conditions precedent to performance of the contract have occurred, and no conditions subsequent have excused defendant HealthSource from that contract.

105. Defendant HealthSource has breached this contract.

106. Defendant HealthSource's breach of contract was unjustified and without cause.

107. Mrs. Lorentzen has been damaged as a direct and proximate result of defendant HealthSource's breach of contract, and she is therefore entitled to damages, as described more fully below.

## COUNT VII:
## Breach of the Covenant of Good
## Faith and Fair Dealing
## (Against Defendant HealthSource)

108. The preceding paragraphs are hereby realleged and incorporated herein by reference.

109. Defendant HealthSource was under an obligation to act in good faith and with fair dealing as to the terms of the contract it had with Mrs. Lorentzen.

110. Defendant HealthSource has breached its obligation to act in good faith and with fair dealing with respect to that contract.

111. Defendant HealthSource's breach of the covenant of good faith and fair dealing was unjustified and without cause.

112. Mrs. Lorentzen has been harmed as a direct and proximate result of defendant HealthSource's breach of the covenant of good faith and fair dealing, and she is therefore entitled to damages, as described more fully below.

## COUNT VIII:
### Tortious Interference with Business Relationship or Business Expectancy
### (Against All Defendants)

113. The preceding paragraphs are hereby realleged and incorporated herein by reference.

114. Mrs. Lorentzen had established and valid business relationships with her patients as well as an expectancy of future business from said patients.

115. Defendants had knowledge of these business relationships and expectancies.

116. Defendants intentionally and maliciously interfered with these business relationships and expectancies by inducing or causing a breach or termination of certain of the relationships and expectancies.

117. As a direct and proximate result of the actions taken by defendants, Mrs. Lorentzen has sustained injury and damages.

118. Mrs. Lorentzen is therefore entitled to an award of damages and other relief from defendants, as described more fully below, including an award of exemplary damages.

## COUNT IX:
## Termination in Violation of Michigan Public Policy
## (Against Defendant HealthSource)

119. The preceding paragraphs are hereby realleged and incorporated herein by reference.

120. Under Michigan law, certain grounds for terminating a worker are so contrary to public policy as to be actionable.

121. Michigan courts have recognized that, where a worker acts in accordance with a statutorily granted right and is terminated because of such action, a cause of action will lie.

122. As set forth in greater detail above, defendant HealthSource terminated Mrs. Lorentzen because she exercised statutorily granted and protected civil rights.

123. Mrs. Lorentzen has been harmed as a direct and proximate result of defendant HealthSource's decision to terminate her in violation of public policy, and she is therefore entitled to damages, as described more fully below, including an award of exemplary damages.

## COUNT X:
## Common Law Assault
## (Against Defendant Mark E. Kraynak)

124. The preceding paragraphs are hereby realleged and incorporated herein by reference.

125. As described above, on several occasions while Mrs. Lorentzen was working at HealthSource, defendant Mark E. Kraynak engaged in conduct that constituted either (1) the intentional and unlawful offer of corporal injury to her by force or (2) force intentionally and unlawfully directed toward her, under circumstances that created a well-founded apprehension of imminent contact, coupled with the apparent present ability by him to accomplish the contact.

126. Accordingly, Mr. Kraynak committed the tort of assault under Michigan common law on those occasions.

127. Mrs. Lorentzen has been harmed as a direct and proximate result of defendant Mark E. Kraynak's assaultive conduct, and she is therefore entitled to damages, as described more fully below, including an award of exemplary damages.

## COUNT XI:
## Common Law Battery
## (Against Defendant Mark E. Kraynak)

128. The preceding paragraphs are hereby realleged and incorporated herein by reference.

129. As described above, on several occasions while Mrs. Lorentzen was working at HealthSource, defendant Mark E. Kraynak engaged in conduct that constituted the unconsented to and harmful or offensive touching of Mrs. Lorentzen's person.

130. Said conduct by Mr. Kraynak was willful, intentional, and against Mrs. Lorentzen's will.

131. Accordingly, Mr. Kraynak committed the tort of battery under Michigan common law on those occasions.

132. Mrs. Lorentzen has been harmed as a direct and proximate result of defendant Mark E. Kraynak's instances of battery upon her, and she is therefore entitled to damages, as described more fully below, including an award of exemplary damages.

## COUNT XII:
## Declaratory Relief
## (Against All Defendants)

133. The preceding paragraphs are hereby realleged and incorporated herein by reference.

134. An actual controversy exists between the parties about the legality of certain actions described in this amended complaint.

135. Declaratory relief is necessary and appropriate as it would serve a useful purpose in clarifying and settling the legal issues between the parties and afford relief from the uncertainty and controversy giving rise to this proceeding.

136. Therefore, Mrs. Lorentzen respectfully requests entry of such relief in the nature of a declaratory judgment as may be allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Kathleen A. Lorentzen respectfully prays that this Court grant her the following relief:

1. Grant her a trial by jury on all claims so triable;

2. Grant her compensatory damages, including but not necessarily limited to back pay, past and future medical expenses, and damages for past and future mental and emotional distress;

3. Grant her an award of punitive damages pursuant to 42 U.S.C. § 1981a(b)(1) and exemplary damages pursuant to Michigan law;

4. Grant her prejudgment and post-judgment interest;

5. Grant her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k), Mich. Comp. Laws § 37.2801(3), and as may be otherwise allowed by applicable law;

6.    Grant declaratory and injunctive relief, as provided by law;

7.    Tax costs of this action against the defendants; and

8.    Grant her such other and further relief as the Court may deem just and proper.

Respectfully submitted, this the 20th day of July, 2018.

THOMAS MORE LAW CENTER

BY: s/Richard Thompson
Richard Thompson (Mich. Bar No. P21410)
B. Tyler Brooks (Mich. Bar No. P82567)
24 Frank Lloyd Wright Drive
Suite J 3200 (P.O. Box 393)
Ann Arbor, Michigan 48106
Telephone: (734) 827-2001
Fax: (734) 930-7160
rthompson@thomasmore.org
tbrooks@thomasmore.org

*Counsel for Plaintiff Kathleen A. Lorentzen*

## CERTIFICATE OF SERVICE

It is hereby certified that on that on this date the foregoing document was filed with the Court's CM/ECF system, which will send notice of such filing to counsel for all parties of record. As noted below, all parties to this action have counsel of record who have entered appearances with this Court and upon whom service of this Amended Complaint and Jury Demand will be made via the Court's CM/ECF system. Additionally, parties may access this document through the Court's CM/ECF system.

Date: <u>July 20, 2018</u>
<span style="float:right">
s/Richard Thompson<br>
Richard Thompson<br>
THOMAS MORE LAW CENTER<br>
*Counsel for Plaintiff*
</span>

**SERVED:**

Thomas P. Vincent, Esq.
Courtney L. Nichols, Esq.
PLUNKETT COONEY
38505 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
tvincent@plunkettcooney.com
cnichols@plunkettcooney.com

*Counsel for HealthSource Saginaw, Inc. and Mark E. Kraynak*

David J. Yates, Esq.
SEGAL MCCAMBRIDGE SINGER & MAHONEY
29100 Northwestern Highway, Ste. 240
Southfield, MI 48034
dyates@smsm.com

*Counsel for Mark Puckett*